Good morning. May it please the Court. I'm Shakthi Murthy for Mr. Jefferson. I'd like to start out, before I get into any legal arguments, just giving an overall feel for this case. My client is innocent. He didn't commit a murder. There were no witnesses or evidence against him. We've got two jurors in this case that showed clear bias and were not properly questioned by the court. We've got the only evidence against my client being his boyfriend, who had a vendetta. They both had vendettas against each other. There was no chance of cross-examining Mr. Muell, the victim. So we've got a case with so many holes in it that, cumulatively, the faith in the verdict is shaken. And we've got a person in prison for life who... I'm not sure that's your best starting point, because even if you identify those two jurors as being so biased, and I'm not sure that's been the case, you've got ten jurors that came to the same conclusion. So I understand you've got specific objections you want to present, but I don't understand your case to be, and don't think it's very strong, presented as an actual innocence case as such. I understand your client maintains his innocence, but the attack isn't simply, I'm innocent. They couldn't have convicted me on this evidence. The attack is much more specific with regard to, in particular, the bias of the jurors. So you may want to focus on that. You're quite correct in terms of, you know, this being a court of appeal and discussing legal issues. I just wanted to start out by sharing my opinion that my client is innocent and having that as a backdrop to whatever arguments we go into. Now, you're correct again that ten jurors did convict my client. However, my client legally, as the court knows, has a right to have 12 jurors who are not biased against him because he's gay, because he's black, you know, to look at the evidence objectively. And again, the evidence is very, very flimsy, but look at it objectively and say, you know, this is what we think. He has that right, and I'm here asking... I'd insist on bringing it up. The evidence isn't all that flimsy. I mean, there's little question about who committed the shooting. The question has to do with intent and, in particular, the self-defense claim. Right. Well, see, I mean, if you shoot somebody who's trying to kill you, you have not committed murder. And the only evidence as to who was trying to kill, you know, whether it was Mr. Jefferson trying to kill Mr. Newell or vice versa, is Mr. Newell's comments, which were never subjected to cross-examination. Because he was dead. Right. Shot by your client. Right. So, you know, that's the situation it is. Either it happened one way or it happened the other. The evidence is limited because nobody else was there to say. Right. Now, again, my point is that the trial court had found that these were not dying declarations, that Mr. Newell, when he made these declarations, did not know that he was dying. So that we're talking again about somebody making statements that, you know, Mr. Jefferson shot me. We know that they had a very volatile relationship. We know that the victim had raped my client. My client had hit the victim. All kinds of stuff was going on. These guys had it in for each other. You know, anyone could have made up anything. And there was no chance at all for anyone to say, well, this is the only evidence against Mr. Jefferson. You know, let's try to get into it. Let's try to cross-examine this person. Let's try to figure out what's going on. We've got two people that are in an intimate relationship and that are really volatile. And we're both making up stuff constantly about each other. So, you know, overall, we've got a very flimsy case. And then I want to go specifically onto the two jurors. And my point, we've got a juror who's a born-again Christian or who stated that he was a born-again Christian. Now, we're not talking about just any old Christian. We're talking about born-again Christians. That's a specific sect of Christianity. We're talking about a case involving two black gay guys and involving quite a bit of sexually explicit testimony that would be disturbing to certain people. And this is a case where it just screams out at all of our biases and prejudices, whether we know and admit it or not. So I think in that situation, you're going to have a judge that would have been legally required to say, look, this has come up as to you being a born-again Christian. Can we ask about, you know, what religious beliefs you have? You know, what your church believes about homosexuality. Now, by analogy, if we had a case where someone said they couldn't convict based on their religious beliefs, the judge would certainly inquire as to their religious beliefs. I've got to say, that sounds every bit as stereotypical as the allegation you're making about a born-again Christian. I mean, it's an astonishing allegation to say because someone professes to be a Christian of a particular adjective that you're going to assume that they've got bias. And despite the statement of the juror in response to inquiry by the court that it would not bias him, would not prejudice him, you're prepared to accept the stereotype that plainly it must. So the judge has got to dig deeper. In the face of a context where your client's lawyer isn't seeking any further inquiry, as best I can tell. I mean, there was no limitation that I saw being put on your client's counsel to ask additional questions or probe there. Nothing else was asked about. So why should we assume now that there must be some bias there and born-again Christians are bad people because they don't like gays as bad people. And hence, let's throw the whole thing out. I mean, it's all pretty stereotypical. I mean, I see a couple of points and they're all really good ones. I'm just going to answer them one at a time. First, as to my client's attorney at trial, my client's attorney at trial asked for that juror to be kicked off and was very consistent upon it. I didn't ask. I didn't say that. I said, what inquiry did he make with regard to what additional questions the judge should ask? Because your objection now is that the judge should probe deeper. Where did your client's counsel ask for questions? Where did he ask for the opportunity to question himself? What was insubstantial about the inquiry? I guess just putting myself in trial counsel's shoes, I would say his feeling was probably like, this is so out there, I just have to get this guy off the jury. I mean, and we also have a situation where we've got a juror who is stonewalling. Now. So what we have on the record at that point is a juror who says he wouldn't be prejudiced. And defendant asks that the juror be excused in the face of the juror's statement that he wouldn't be prejudiced. And now you're jumping appears to the conclusion the trial judge should have kicked him off because he's the born again Christian. I mean, that's a stereotypical more stereotypical than before. You're not just saying that you should have inquired further. You're saying he should have kicked them off. Well, I've got just two points, first of all, in terms of what the juror's responses were. The juror's response was that this conversation never happened. So he wanted the Court to believe that there's this gentleman, Mr. Martonic, who's on a different, totally on a different jury. The guys are having lunch or whatever. And he's saying that Mr. Martonic just made the entire thing up. Now, that is utterly implausible. He's saying that Mr. Martonic, who didn't know him, made the entire thing up, managed to track down which jury he's on and brought it to the attention of the judge. Now, that's implausible. So we've got in the beginning, we've got juror number 12 clearly not being honest. I can even say, you know, as a matter of application of facts or finding of facts, it's an unreasonable finding of facts that Mr. Martonic could have just made this entire thing up. So we haven't got a question where juror number 12 is saying, yes, I made those comments, but I can be totally fair. We've got a situation where juror number 12 says, I never said any of that stuff. This guy that tracked me down and reported this to you just made the whole thing up. So I just want to make that really clear. And then second, let's just go to this point about the born-again Christians. Now, I'm not placing any value judgments on who's bad and who's good. That's not what this is about for me at all. This is about, you know, looking at a particular sect, whether it's born-again Christian or say they're Quaker. We know that Quakers have certain views. We're not saying they're right or wrong. You've got a Quaker on a death penalty case, you know. You can inquire about it. It's brought to the attention of the judge. Hey, this guy said he's a Quaker, and they'll be sorry that they picked him for this death penalty case. Well, you ask him. You know, you ask him, are you a Quaker? How did your church view the death penalty? You know? So I'm really not saying that, you know, being this or this is bad or that's bad or Christian is bad. I'm talking about born-again Christians as a specific type of Christian, whether they're bad or good. He was a little more than saying he was a born-again Christian. He also said, I'm a very opinionated person, if you believe the witness, and that I bet they'll be sorry they picked me. Right. That's a little more than just belonging to a church. Why would they be sorry they picked him? But anyway, you have 30 seconds left. You may want for rebuttal. Okay. I'll take it for rebuttal. Thank you. May it please the Court. William Wood, Deputy Attorney General, on behalf of Respondent. I only have a few points I'd like to make, and that is the issue here is juror impartiality and maybe perhaps withholding evidence during board hire. But the partiality is a question of state of mind, which the decisions have told us are questions of fact. All you have to do is lie, and it's okay. No. Here, what has to happen is what did happen. When the impartiality arose, the trial court held a hearing and inquired. And if the juror says, yes, I'll be impartial, that's it. No. The court judges the credibility of the juror against the evidence. A man out in the hall who had no connection with the trial who said, I heard the juror say these things. The juror said he didn't say them, and the judge believed the juror and thought that some unrelated person who was just a citizen was making up this story. No. What the judge found was that the allegations hadn't been proven, and he felt that the juror was, his professions of impartiality and lack of bias were correct. Well, somebody had to be lying. Isn't that true? No, I disagree. The man thought he heard it, and he didn't? Well, this court knows, I'm sure, as I do and every attorney knows, that the witnesses to a single event will hear, see, and report it differently. And you think that when one person says, here's what a man said, he made these comments and the other said I made it, had no such event occurred, that that's because they heard things differently? Well, no. The juror didn't say no such event occurred. What he said was he denied the specific statements which Mr. Martonic attributed to him. Did he say what he did say? Yes, he said. He said, I may have said I was a Christian. And that, to my recollection, is as much as was asked of him in terms of what he actually said. And the other neutral, impartial witness just happened to add, he said, I'm a born-again Christian who's very opinionated, and they're going to be sorry they picked me. All that he just happened to hear, although it didn't occur. No, I didn't say it didn't occur, and the trial judge didn't say it didn't occur. What he found was the juror was credible and that the allegations of Mr. Martonic had not been proven, so he may have concluded that Mr. Martonic was not accurate. You will recall that this conversation happened at lunch on a Thursday. Mr. Martonic said he thought about it during the course of that afternoon when he finally reported it, and later on he said he wrote down some notes to try and help him recall things. Mr. Martonic was inaccurate in several respects. He said the juror said he had been on the trial six weeks. Well, at that point the trial had occurred three weeks. He said the woman who brought the whole conversation up, the context of the conversation, which was trials going long, she was concerned about whether she would be permitted to stay beyond five days and was concerned about her employer. Those of us who are familiar with the trial context here in the state court know that the five days was generally a limit that employers pay for jury service and that likely is not the lady juror was concerned about having to go beyond five days, not being permitted because of a concern about her employer. I bring those up not because I'm castigating Mr. Martonic, but they illustrate all the facts in which these specific statements that he attributed to juror 12 are not necessarily credible as word-for-word statements, and that's what juror number 12 said. I didn't say those things. I may have said I was a Christian. Note also the trial court said these statements don't amount to a showing of bias, and juror number 12 was subjected to a hearing at which the trial court questioned him on his partiality and all the counsel was able to question him on his partiality, and he maintained he was still impartial and the trial court credited that. That is a finding of fact, and in my view, that's reasonable and binary. It may be impossible to upset the finding of fact, but whether you believe that that's the proper finding of fact is a different issue. I wouldn't disagree that sitting as a trial court, anybody might have concluded the opposite. I would think anybody might have, and I would think if you were the trial lawyer on the other side, the last thing in the world you would want is a juror who had said these things. If I were a trial lawyer in this circumstance, I might have asked different questions or more. You might have, and that would have been a good idea. But we're dealing here with whether the trial court was unreasonable in its findings, and I think that the evidence may well be that there is nothing to do about the determination the trial court said, and it may be irrelevant whether he made an error because that's not the test, as you say. That's correct. With those comments, I'd be happy to submit unless the Court has more questions. Thank you, counsel. Thank you. I don't think this is an issue of deferring to findings of fact at all. I think the trial court was legally required to ask this person what their religion was, and I think that's the way to approach this case. I think if we just want to. Why is he legally required to ask what his religion is? Because I gave the analogy of, you know, you've got someone who's a Quaker, and they're making comments like this on a death penalty case, like they'll be sorry they picked me. Here's a trial judge. Yeah, but the trial judge found the comments were not shown to him. He didn't believe it was proved that he did make those comments. So why did he have to ask anything? Well, this Court has the authority in a habeas case to find that the facts were unreasonably determined. Well, that's what I said. If you make a determination that it was not just wrong, but it was unreasonable for the trial judge to do that, it's quite a high standard. But that only applies to the total denial of what Mr. Martonic said. So if we say that it was unreasonable to say that Mr. Martonic made this thing up out of thin air, that puts us, then it's a legal question of, okay, finding that this conversation did take place, there's a legal duty on the part of the trial court to say, okay, tell me a little bit about this born-again Christian stuff, you know. Tell me a little bit about if your religion has some particularized view of gays. And I've quoted a lot in my opening brief about certain fundamental Christian views. Well, you know, it's really, Judge Clifton, it's not really what the religion believes. It's what this person believes. Their born-again Christians, for instance, do not all share the same view on lots of issues. They're not all of the same political persuasion, whatever the appearance may be. They're individuals, and born-again Christians can belong to various sects. So it's not really a question of what the religion believes. It's a question of what the individual believes. Right, but we don't know that, because the judge had a legal duty to find out. Well, there's a lawyer there who is supposed to ask questions and bring out information. It's not the judge's role. You have a hearing, and you have a question about a juror. And there's a lawyer who's supposed to examine the juror. Was there any restriction put on his ability to ask questions? My belief from reading the record is that the trial lawyer's view is that let's just get this person off. How do you get them off? You get them off by asking questions and showing that there's bias. Right. Let's look at where we are now. The problem is looking at where we were then. It's the record we have to go by. Right, but as an appeals court, there's still a look at was it legally sufficient, because the bottom line is we've got to have 12 jurors who are impartial deciding this person's fate on this charge of murder with very flimsy evidence. We've got to. If we don't have that, we can't just close the book and bring this case. We really can't. And the only way we can determine that is by looking at the record. Right. And we have to see if the record demonstrates that somebody was not impartial. Right. And the record tells us that, as you put it, the defense lawyer just said let's get them out of here and didn't ask questions, didn't establish facts in the record that would show bias. So our angle, Judge Feinhart, could be let's see if there's a legal duty on the part of this trial judge having been alerted to this problem, having been alerted to the fact that juror number 12 is, you know, as you said, somebody is lying. Mr. Martonic was not making that up out of thin air. Someone's lying. It's a juror on this murder case. What is the trial judge's legal duty in this situation? Can he just sort of let everything slide? Can he say, well, I'm just not sure who to believe? Or does he really have to probe and say, look, you know, just tell me, you know, what exactly does your church believe about gays? Okay. I think we've covered it all. Okay. Thank you very much. Case just argued will be submitted. Next case for argument. Is are the combined cases of U.S. V. Leon Esparza and U.S. V. Stevens. We gave you 15 minutes, which was generous for two. And I guess you're dividing the time. Yes, Your Honor. We are. How are you dividing it? I will be addressing on behalf of both Mr. Leon Esparza and Mr. Stevens only the challenge to the substance abuse testing provision. And Ms. Fontier will be addressing only the challenge to the substance abuse treatment provision.
judges: Reinhardt, Clifton, Weiner